James M. Joseph v. Commissioner.
Joseph v. Commissioner
Docket No. 26825.
United States Tax Court
1951 Tax Ct. Memo LEXIS 180; 10 T.C.M. (CCH) 646; T.C.M. (RIA) 51212; June 28, 1951
*180 Sidney Rigelhaupt, Esq., and Harold E. Russert, Esq., 711 Mahoning Bk. Bldg., Youngstown, Ohio, for the petitioner. Norment Custis, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in the amounts and for the calendar taxable years, as follows: Year
Deficiency
1943 Income and Victory Tax
$15,521.90
1944 Income Tax
$14,211.24
1945
26,205.34
1946
22,553.16
1947
13,598.92
Total
$76,568.66
The calendar year 1942 is also involved in this proceeding because of section 6, Current Tax Payment Act of 1943. Certain adjustments made by respondent for the various years involved, are not in controversy herein. The sole issue presented is whether, on October 1, 1942 the petitioner and his eight sons entered into a valid and subsisting partnership for business purposes and thus whether respondent erred in taxing to petitioner the entire net income from the business, in amounts as determined by respondent, for the period October 1, 1942 to December 31, 1942 and each of the years 1943 to 1947, inclusive. The stipulated facts are so found and included herein by reference. *181 From the stipulation, exhibits and testimony adduced, we make the following, Findings of Fact The petitioner is an individual residing at 118 North Lane Avenue, Youngstown, Ohio. His federal income tax returns for the taxable years involved, were filed with the collector of internal revenue for the 18th district of Ohio. The petitioner is 67 years of age, married and father of thirteen children. Since 1913 he has been engaged in the business of manufacturing and selling non-alcoholic beverages commonly known as soft drinks. The business consisted of buying syrups, mixing and bottling soft drinks and selling as a wholesaler to numerous customers on distribution routes built up over the years. The nature of the business was such that young boys could perform certain duties and as each of petitioner's sons reached teen age he was started off on part time employment and thereafter through the years he grew up in the business, learning all its various phases of operation and management, and later on became a full time salaried employee. In that manner the petitioner's eight sons, individually and collectively, contributed materially to the successful growth of petitioner's business. *182 In 1930 petitioner became ill and since then and because of continued ill health he has spent each winter, from early November to April or May, in Florida and he has given very little time to the management of the business. In 1930 petitioner's older sons took over the active management and operation of the business, subject to petitioner's control, and thereafter from time to time as the younger sons became of sufficient age they actively participated in the management and operation of the business. Prior to 1940 petitioner used his own formula for manufacturing soft drinks but in 1940 added an additional product under a franchise acquired from the Dad's Root Beer Company of Chicago, Illinois and in 1941 added another additional product under two franchises acquired from the Squirt Company of Beverly Hills, California. Those franchises gave the exclusive right to vend the product thereunder in certain counties in Ohio. Prior to 1941 petitioner operated bottling plants in Youngstown and Columbus, Ohio and Kingston, Pennsylvania but he sold the Kingston plant in 1941. Throughout the years prior to October 1, 1942 petitioner conducted his business as a sole proprietorship under the trade *183 name of Star Bottling Works, but as of that date petitioner and his eight sons entered into a partnership agreement concerning that business, as more particularly hereinafter set forth. In 1942 petitioner was about 59 years old and the names and approximate ages of his eight sons were John 38, Mike 36, Paul 35, George 32, Tony 27, Henry 21, Joseph called Joey (age not shown), andsamuel 18. In 1942 each of the first five sons was married, had one or more children and maintained a separate home apart from petitioner. In 1942 Henry was single and lived with petitioner but in 1943 he married and established his own home apart from petitioner. In 1942 Joey was single and serving in the Army and Samuel was single and living with petitioner. Prior to and during 1942 the petitioner's sons were dissatisfied with the salaries petitioner paid them and expressed the desire to acquire an interest in the business which they had managed, operated and expanded over a period of years, but petitioner would not acquiesce. In the latter part of September 1942 the sons who were actively engaged in the business demanded that the eight sons be given an opportunity to purchase an aggregate 50 per cent *184 interest in the business and when petitioner refused, they refused to work and petitioner's plants were forced to shut down for about two weeks. At that time a representative of the Dad's Root Beer Company brought the petitioner and some of his sons together for a meeting at which they orally agreed that petitioner would sell to each of the eight sons a six per cent interest in the business exclusive of the real estate; that they would form a partnership commencing as of October 1, 1942 to operate the business under the firm name of Star Bottling Works; and that the price to be paid for the interest purchased by each son would be in the amount of six per cent of the book value of the business as of September 30, 1942, as determined by an audit of its books and records. Following the oral agreement the petitioner and his son Tony visited a lawyer to have the oral partnership agreement reduced to writing. The petitioner impressed upon the lawyer that he wanted his remaining 52 per cent interest in the business duly protected because he had himself, a wife and several daughters to maintain and he did not want the sons who were managing and operating the business to also be in a position *185 to control the business without his advice and consent on various matters. Pursuant to their oral partnership agreement the petitioner and his sons engaged a Youngstown firm of certified public accountants and a Columbus firm of public accountants to audit the books and records of the Youngstown and Columbus plants and determine the book net worth of each plant, respectively, as of September 30, 1942. The accountants' audits and balance sheets as of that date showed total assets (embracing such items as cash, accounts receivable, inventories, machinery and equipment, furniture and fixtures, trucks and automobiles, bottles, cases and deferred charges), total current liabilities and net worth for each plant, respectively, as follows: Youngstown
Columbus
Total assets
$82,780.31
$42,896.60
Total current liabilities
10,457.73
641.16
$72,322.58
$42,255.44
The book net worth of both plants, which totalled $114,578.02 did not include the buildings and real estate used in the business as to which petitioner retained individual ownership but agreed to rent to the partnership at a fair rental determined by the accountants and further did not include the franchises *186 standing in petitioner's name because the sons insisted that they had no value except as created by the efforts of the sons in building up business for the franchised soft drinks and petitioner acceded and agreed that neither the partners nor the partnership would make any payments to him on account thereof. On October 10, 1942, the petitioner and several of his sons individually signed the written "Articles of Co-Partnership" and thereafter during that month the remaining signatures were affixed thereto, including Josephine Joseph as trustee for Samuel Joseph, but for convenience such trusteed interest will be referred to as that of Samuel. The instrument provided, inter alia: that the parties agree and do thereby vecome partners under the firm name of Star Bottling Works to manufacture and sell soft drinks; that the assets at the valuation shown on the balance sheet constitute the capital of the partnership contributed in the amounts of 52 per cent by petitioner and six per cent by each of the eight sons; that the 48 per cent capital contribution by the sons was actually paid in by petitioner and concurrently each of eight sons shall execute and deliver to petitioner their respective *187 promissory note in the face amount of $6,874.68 (six per cent of $114,578.02); that Tony and George shall be in charge of the partnership business at Youngstown and Columbus, respectively, subject to the supervision and control of petitioner; that partnership monies shall be deposited in a partnership account in a bank mutually agreed upon by the partners; that petitioner shall draw $100 per week and devote only such time to the partnership business as he deems necessary; that the amount of monthly cash withdrawals by each partner shall be determined by petitioner and charged to the respective personal account of each partner; that each partner's share of the partnership profits shall be credited to his personal account and at the close of the partnership's fiscal year on September 30th the credit balance therein shall be paid to petitioner on behalf of that partner and be applied and credited on such partner's promissory note to petitioner; that the franchises for Squirt and Dad's Root Beer belong to petitioner who agrees to permit the partnership's use thereof without charge; that all contracts shall be in the partnership name and no partner shall release or cancel any indebtedness *188 or obligation to the partnership except on payment in full or the consent of petitioner; that upon dissolution or termination of the partnership by death or otherwise there shall be a true and just final accounting and all outstanding contracts shall be performed at the expense of and for the benefit of the partnership and its profits or losses shall be apportioned to the respective partners in the same ratio as their respective contributions bear to the entire capital of the partnership; and that in the event any of the sons shall desire to sell his partnership interest or die, such interest shall be first offered for sale to petitioner. Concurrently with the execution of the partnership agreement the sons executed and delivered to petitioner their joint promissory note in the face amount of 48 per cent of the capital contribution to the partnership, i.e. in the sum of $54,997.44. That note was paid in full by payments thereon in the amounts of $2,571.61 on September 30, 1944, $3,702.53 on September 30, 1945 and $600.54 on September 30, 1946, or a total of $6,874.68, by or on behalf of each of the eight sons from their respective shares of the partnership profits which were credited *189 to their respective personal accounts and, as agreed, paid to petitioner and credited on the note. Since October 1, 1942 petitioner has given very little time to the business of the Star Bottling Works which has been managed and operated almost entirely by at least part of the sons on behalf of all of the interested parties. During the war years several of the sons served in the armed forces at various times, namely, Joey from 1941 to 1946, Samuel from February 1943 to 1946, Paul from February 1944 to early 1945, and Tony from February 1945 to August 1946. Also, for short periods during the war George and Tony held part time jobs in defense plants. Despite the provision in the articles of co-partnership as to petitioner determining the amount of monthly cash withdrawals, the sons determined and petitioner merely assented that each son while actively engaged in the business should be entitled to draw a certain amount per week as compensation for services prior to determining the net profits of the business and the pro rata distributive shares thereof. As a result thereof and during the taxable years the account of each son reflected credits for the pro-rata distributions of the profits *190 of the business and also credits in varying amounts for services rendered. In November 1942 the Squirt franchises theretofore issued to petitioner were surrendered and new franchises were issued in the name of the Star Bottling Works. The Dad's Root Beer franchise remained in petitioner's name until May 26, 1947 when a new franchise was issued in the names of petitioner and his sons. On November 26, 1945, a written agreement was executed whereby the petitioner as owner of a 52 per cent interest and his sons John, Samuel and Paul each as owner of a six per cent interest in the Columbus plant of the business of the Star Bottling Works sold their aggregate 70 per cent interest in the business and equipment in that plant to petitioner's sons Tony, Henry, Mike, Joey and George for a total consideration of $38,654.67. The purchasers paid $1,196.27 in cash and executed a joint note in the principal amount of $37,458.40 payable to petitioner, John, Samuel and Paul on or before five years from date at the rate of five cents for each case of beverage sold and the note was secured by a chattel mortgage covering all equipment and fixtures of that plant. The petitioner had a 52/70th interest *191 in that note and each of the sons John, Samuel and Paul had a 6/70th interest therein. In the same agreement petitioner individually sold his entire interest in the real estate occupied by the Columbus plant to his five sons, Tony, Henry, Mike, Joey and George for a segregated consideration of $16,343.50 payable in certain amounts in November 1945 and January, February, March and April 1946. On that transaction each of the sellers realized a capital gain which was reported on his individual federal income tax return for 1945. On October 8, 1946, petitioner's son Paul died, survived by his widow Virgina Marie Joseph and two minor children. Paul's estate was administered in the Probate Court of Mahoning County, Ohio and the application filed in that court for the itemization of assets and liabilities and for the determination of inheritance tax, showed, inter alia, Paul's "partnership interest" in the Star Bottling Works appraised at a value of $11,319.87, which interest and the value thereof was approved and found by the Probate Court in its final order of May 20, 1947. An audit of the books and records of the Youngstown business of the Star Bottling Works at the close of its fiscal *192 year on September 30, 1946 showed that Paul's capital account in that business plus undrawn credits to his account, on that date, amounted to a total of $8,336.72. That figure plus Paul's share of $2,983.15 in the remaining unpaid balance of the joint note mentioned in the next preceding paragraph comprised the amount of $11,319.87 reported to the Probate Court. The petitioner paid $11,319.87 in cash to Paul's estate for the purchase of the deceased son's interest in the Youngstown business of the Star Bottling Works and his interest in the joint note. Petitioner immediately sold Paul's interest in the Youngstown business, half and half, to John and Samuel for a consideration of $4,168.36 from each of those two sons, which was paid partly in cash and the balance by an assignment of their respective interest in the above mentioned joint note executed by the five sons upon their earlier purchase of the Columbus branch of the business. At the time of Paul's death petitioner's sons Tony, Henry, Mike, Joey and George (who had purchased the Columbus business) still retained their respective six per cent interest in the Youngstown business, petitioner still retained his 52 per cent interest *193 therein, and shortly after Paul's death John and Samuel each had a nine per cent interest therein consisting of their respective original six per cent interest plus half of Paul's original six per cent interest purchased by them. Shortly after Paul's death and during 1946, upon advice of a lawyer, the petitioner and his then living seven sons entered into a new written agreement of co-partnership which provided, inter alia, that they thereby became partners in the Youngstown business under the firm name of Star Bottling Works entitled to distributions of the profits and losses thereof pursuant to their above stated percentage of interest in that business. Throughout the years involved herein following the original partnership agreement, various reports and forms were filed with different Ohio State authorities showing that the business was being operated on a partnership basis; Dun & Bradstreet, Inc. was notified that the Star Bottling Works was a partnership business; suppliers of materials and equipment dealt with the business as a partnership; and federal partnership returns of income were filed for the fiscal years ended September 30, 1943, 1944, 1945, 1946, and 1947, showing *194 the amounts credited to each partner for services rendered, if any, plus his share of the net profits pursuant to his individual interest in the business for each year including the modifications of the respective interests under the agreements and transactions outlined above. The petitioner and each of his sons individually received and retained for their own benefit and use their respective shares of the profits of the business and reported such income on their individual tax returns. The petitioner and his eight sons acting in good faith entered into a valid and subsisting partnership effective on October 1, 1942, under the firm name of Star Bottling Works, for the purpose of operating a business of manufacturing, bottling and selling soft drink beverages and sharing the profits and losses thereof pursuant to their respective capital interest in the business acquired through actual purchase thereof and, further, during the subsequent years the sons, except for periods of armed services to their country, rendered vital services in the operation, management and control of the business. Opinion This proceeding presents a question of fact and in our opinion the stipulation, exhibits *195 and testimony of record herein conclusively establish the ultimate finding of fact above set forth, which is dispositive of the case. In reaching that conclusion we have applied to the facts and circumstances herein the principles announced in ; ; and . The respondent erred in his determination. Decision will be entered under Rule 50.